# SETTLEMENT AGREEMENT AND
# MUTUAL GENERAL RELEASE OF CLAIMS

This Settlement Agreement and General Release (hereinafter the "Agreement") is entered into by and between Plaintiff, JOHN GOLLADAY ("Plaintiff"), and Defendants, ABC ELECTRIC SERVICE, INC., a Florida Profit Corporation, and JOSEPH A. ABRAHAM, Individually (collectively "Defendants").

WHEREAS, Plaintiff filed a lawsuit alleging claims against Defendants in the United States District Court, Middle District of Florida, for alleged violations of the Fair Labor Standards Act; and

WHEREAS, Defendants have denied any violations of the Fair Labor Standards Act; and

WHEREAS, the parties prefer to avoid the uncertainties and continued expense of litigation;

NOW, THEREFORE, in full consideration of the mutual promises and covenants contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, Plaintiff and Defendants, agree as follows:

1. The parties desire to reach a full and final settlement and resolution of all past and present claims, controversies and disputes that Plaintiff has or may have against Defendants and their parents and predecessors, affiliates, subsidiaries, related companies, owners, officers, directors, partners, employees or agents, in their individual or representative capacities (hereafter collectively the "Released Parties"), or that Defendants may have against Plaintiff, related in any way to Plaintiff's former employment with any of the Defendants as of the date of this Agreement, including all claims alleged in this matter or any other matter, as well as any allegations that Plaintiff is owed any wages, compensation, penalties, contractual amounts, or other monies, or any other claims that relate in any way to Plaintiff's former employment with Defendants as of the date of this Agreement.

2. For and in consideration of the promises outlined in Paragraph 3 of this Agreement, Plaintiff agrees as follows:

   A. To settle and release any and all claims which Plaintiff has against Defendants, including but not limited to claims related to Plaintiff's claim for unpaid wages which arose or may have arisen prior to the date of execution of this agreement and to dismiss, with prejudice, the case he has filed in the U.S. District Court, Middle District of Florida, Fort Myers Division, Case No. 2:15-cv-377-UA-DNF (the "Lawsuit");

   B. To agree and acknowledge that this settlement does not constitute an admission by Defendants of any violation of any federal, state, or local

1

statute or regulation, or any violation of any of Plaintiff's rights or of any duty owed by Defendants to Plaintiff; and

  C. To file a joint motion for approval of this Settlement Agreement in the Lawsuit, and in that motion to seek dismissal of the Lawsuit with prejudice.

  3. For and in consideration of the promises made by Plaintiff in Paragraph 2 of this Agreement, Defendants agree to pay Plaintiff the total consideration of Thirty Thousand Dollars ($30,000.00). The first payment being Five Thousand Dollars ($5,000.00) and the remaining amount in monthly installments of Seven Hundred Fifty Dollars ($750.00), with payments beginning September 1, 2016, and recurring on the 1st of each month until the balance is paid in full. **See attached Schedule of Payments**. The initial payment of Five Thousand Dollars ($5,000.00) will be due within ten (10) days of the date Plaintiff returns an executed copy of this Agreement to counsel for Defendant by email or facsimile. Of the settlement proceeds, Plaintiff will receive a total of Twenty Thousand dollars ($20,000.00), representing Ten Thousand Dollars ($10,000.00) in wages and Ten Thousand Dollars ($10,000.00) in liquidated damages. With respect to Mr. Golladay's payments, each check through November 2017 (the first $10,000) shall be made payable to John Golladay, and reported on an IRS Form 1099 as "other income." The remaining payments to Mr. Golladay shall be made payable to John Golladay, and less applicable and lawful withholdings, and reported on an IRS Form W-2. Plaintiff's counsel will receive Ten Thousand Dollars ($10,000.00), made payable to Morgan & Morgan, P.A., representing attorneys' fees and costs incurred on Plaintiff's behalf. ***Plaintiff specifically is aware of, and agrees with, the amount of attorneys' fees and costs to be paid to his counsel for representing his interests in this matter.***

  4. Each payment, as described in Paragraph 4 above, must be **received by** Plaintiff's counsel (c/o Angeli Murthy, Esq., Morgan & Morgan, P.A., 600 North Pine Island Road, Suite 400, Plantation, Florida 33324) by the due dates described therein. If the Defendants fail to make any one of the payments described above by the due date, Morgan & Morgan, P.A. will notify the Defendants' attorney, John Agnew, by e-mail at John.Agnew@henlaw.com (or another attorney designated by Defendants at any time between the execution of this Agreement and the date that the proceeds are paid in full) and request a cure of this defect. The Defendants shall thereafter have five (5) calendar days from the date of the notice to cure the defect. If the defect is not cured within the five (5) day period, the remaining balance of all amounts owed under this Agreement shall become immediately due and owing. Plaintiff shall have the right to immediately file a judgment against Defendants for all such amounts, plus interest (at the applicable State of Florida interest rate in effect) from the date of the settlement agreement, and reasonable attorneys' fees and costs associated with the entry of such judgment. Each Defendant agrees that it/he is jointly and severally liable for all payments due under paragraphs two (2), three (3), and four (4) of this Agreement.

  5. **<u>Mutual General Release of Claims</u>**.

    a. This Agreement shall constitute a waiver and release of any and all claims Plaintiff has, might have, or believes he has, as of the date of this Agreement,

2

against Defendant, its parents, predecessors, successors, independent contractors, subsidiaries, affiliates, and its directors, officers, shareholders, members, employees -- including, but not limited to, agents, insurers and attorneys, whether such claims arise or could arise under federal, state, administrative, or local law (including but not limited to, actions for compensatory damages, pain, suffering, and emotional distress).

        b.     Defendant knowingly and voluntarily releases and forever discharges Plaintiff of and from any and all claims, known and unknown, which Defendant has or may have as of the date of execution of this Agreement. Defendant's release of Plaintiff is intended to be, and is, broad as the release of Defendant in paragraph 5(c) below.

        c.     Plaintiff knowingly and voluntarily releases and forever discharges Defendant, its parents, predecessors, successors, independent contractors, subsidiaries, insurers, affiliates, and its directors, officers, shareholders, members, employees -- including, but not limited to, agents, insurers and attorneys of and from any and all claims, known and unknown, which Plaintiff has or may have as of the date of execution of this Agreement, including, but not limited to, any alleged violation of:

- Labor Management Relations Act of 1947;
- The Employee Retirement Income Security Act of 1973;
- The Consolidated Omnibus Budget Reconciliation Act of 1985;
- The Civil Rights Act of 1866;
- The Civil Rights Act of 1964;
- The Civil Rights Act of 1991;
- Age Discrimination in Employment Act of 1967;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Americans with Disabilities Act of 1990;
- The Fair Labor Standards Act;
- The Occupational Safety and Health Act;
- The Family and Medical Leave Act of 1993;
- The Florida Civil Rights Act of 1992;
- The Florida Equal Pay Act, § 725.07, *Florida Statutes;*
- Equal Pay Act of 1963;
- The Florida Whistleblower Act, § 448.102, *et seq., Florida Statutes;*
- Florida's Wage Rate Provision, § 448.07, *Florida Statutes;*
- Florida's Attorneys' Fees Provision for Successful Litigants in Suits for Unpaid Wages, § 448.08, *Florida Statutes;*
- The Rehabilitation Act of 1973;
- The Health Maintenance Organization Act of 1973;
- The Immigration Reform and Control Act of 1986;
- Executive Order 11141;
- Executive Order 11246;
- Executive Order 11375;
- Any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance;

3

- Any public policy, contract, tort, common law; or
- Any allegation for costs, fees, or other expenses including attorneys' fees incurred in these matters

each as amended, and any other federal, state or local civil or human rights law, or any other local, state or federal law, rule, regulation or ordinance, and/or public policy, contract, or tort or common law claim, including, but not limited to, any claims for defamation, negligent misrepresentation and/or breach of contract, having any bearing whatsoever or based on any matter or conduct, including without limitation any matter involving the terms and conditions (including compensation and benefits) of Plaintiff's employment with Defendant and this action, which she has or may have as of the date of this Agreement. However, the Parties acknowledge and agree that this release does not cover, and specifically excludes, claims under the Florida Workers' Compensation Act. Plaintiff does acknowledge and agree that, as of the date he signs this document, he has no known worker's compensation claims to bring against the Defendants.

6. Within two (2) days of Plaintiff's execution of this Agreement, the parties agree to file their agreed Joint Motion for Approval of Settlement in accordance with the requirements of the FLSA, and to request that the Court dismiss the action with prejudice.

7. In the event that Plaintiff or Defendants commence an action for damages, injunctive relief, or to enforce the provisions of the Agreement, the prevailing party in any such action shall be entitled to an award of its reasonable attorneys' fees and all costs including appellate fees and costs, incurred in connection therewith as determined by the court in any such action.

8. The Parties mutually agree that they shall not make comments intended to disparage or cause financial or reputational harm to any party to the Lawsuit.

9. For valuable consideration and as an inducement to Plaintiff to accept Thirty Thousand Dollars ($30,000.00) from Defendants in monthly payments rather than one full payment of Thirty Thousand Dollars ($30,000.00), Defendants covenant and agree that these balances shall be paid according to the schedule set forth in paragraph four (4), and that should either or both Defendants file for bankruptcy, no Defendant shall seek to have this debt discharged therein.

10. Plaintiff acknowledges and agrees that with the payment of the amounts stated herein 3, he has reached what he believes is a reasonable compromise of his claims for wages and liquidated damages potentially owed to him under the Fair Labor Standards Act, as well as all attorneys' fees incurred to date. Specifically, Plaintiff has concerns that continued litigation would harm Defendant financially to the point that Plaintiff would be unlikely to recover anything in the litigation, even if he should prevail. Defendants deny that any monies are owed to Plaintiff, and are offering this amount that Plaintiff accepts as full compensation for wages, liquidated damages, and attorneys' fees, solely to avoid the costs of continued litigation.

11. Plaintiff and Defendants agree that this Settlement Agreement is entered into knowingly and voluntarily, after having the opportunity to fully discuss it with an attorney. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft the agreement, the parties agree that the Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

12. This Agreement supersedes all prior agreements and understandings between Plaintiff and Defendants. No cancellation, modification, amendment, deletion, addition, or other changes in this Agreement or any provision hereof or any right herein provided shall be effective for any purpose unless specifically set forth in a subsequent written agreement signed by both Plaintiff and the Defendants.

13. Should any provision of this Agreement be declared or determined by any court of competent jurisdiction to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement and all other valid provisions shall survive and continue to bind the parties.

14. This Agreement may be executed in counterparts and an executed version of this Agreement, if transmitted by facsimile or if scanned and emailed, shall be effective and binding as if it were the originally executed document.

15. The parties agree that this Agreement was entered into in the State of Florida, and shall be construed and enforced in accordance with the laws of the State of Florida. In the event that any party is forced to institute legal proceedings for breach of the terms of this Agreement, it is specifically understood and agreed that any such legal proceeding must be brought exclusively in the federal or state courts servicing Florida. This Agreement may be introduced into evidence to establish and enforce the settlement reached by the parties, and the parties agree that this Agreement shall be submitted for Court approval.

16. The law governing this Agreement shall be that of the United States and the State of Florida.

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily execute this Agreement:

DATE: 8/3/16            Signature: *[signature]*

**JOHN GOLLADAY**

DATE: 8/2/16

ABC ELECTRIC SERVICE, INC.

BY: _____

Signature: _____

JOSEPH A. ABRAHAM

**ATTACHMENT - SCHEDULE OF PAYMENTS**

| PAYMENT DUE | PAYEE: JOHN GOLLADAY | PAYEE: MORGAN & MORGAN P.A. |
|---|---|---|
| w/in 10 days 1099 | 3,000.00 | 2,000.00 |
| 9/1/2016 1099 | 450.00 | 300.00 |
| 10/1/2016 1099 | 450.00 | 300.00 |
| 11/1/2016 1099 | 450.00 | 300.00 |
| 12/1/2016 1099 | 450.00 | 300.00 |
| 1/1/2017 1099 | 450.00 | 300.00 |
| 2/1/2017 1099 | 450.00 | 300.00 |
| 3/1/2017 1099 | 450.00 | 300.00 |
| 4/1/2017 1099 | 450.00 | 300.00 |
| 5/1/2017 1099 | 450.00 | 300.00 |
| 6/1/2017 1099 | 450.00 | 300.00 |
| 7/1/2017 1099 | 450.00 | 300.00 |
| 8/1/2017 1099 | 450.00 | 300.00 |
| 9/1/2017 1099 | 450.00 | 300.00 |
| 10/1/2017 1099 | 450.00 | 300.00 |
| 11/1/2017 1099 | 450.00 | 300.00 |
| 12/1/2017 1099 | 450.00 | 300.00 |
| 1/1/2018 W-2 | 450.00 | 300.00 |
| 2/1/2018 W-2 | 450.00 | 300.00 |
| 3/1/2018 W-2 | 450.00 | 300.00 |
| 4/1/2018 W-2 | 450.00 | 300.00 |
| 5/1/2018 W-2 | 450.00 | 300.00 |
| 6/1/2018 W-2 | 450.00 | 300.00 |

| Date | Amount | Amount |
|---|---|---|
| 7/1/2018 W-2 | 450.00 | 300.00 |
| 8/1/2018 W-2 | 450.00 | 300.00 |
| 9/1/2018 W-2 | 450.00 | 300.00 |
| 10/1/2018 W-2 | 450.00 | 300.00 |
| 11/1/2018 W-2 | 550.00 | 200.00 |
| 12/1/2018 W-2 | 750.00 | |
| 1/1/2019 W-2 | 750.00 | |
| 2/1/2019 W-2 | 750.00 | |
| 3/1/2019 W-2 | 750.00 | |
| 4/1/2019 W-2 | 750.00 | |
| 5/1/2019 W-2 | 750.00 | |
| 6/1/2019 W-2 | 250.00 | |
| **TOTAL** | 20,000.00 | 10,000.00 |